Lillian McINTIRE *v.* Donald O. McINTIRE

CA 80-153                                   605 S.W. 2d 474
Court of Appeals of Arkansas
Opinion delivered September 24, 1980

*Highsmith, Gregg, Hart & Farris*, for appellant.

*Harkey, Walmsley & Belew*, by: *Bill H. Walmsley* for appellee.

JAMES H. PILKINTON, Judge. This is an annulment case. A decree was entered declaring the purported marriage of these parties void ab initio pursuant to Ark. Stat. Ann. § 55-108 (Repl. 1971) because appellee had a prior living wife from whom he had not been divorced at the time he undertook to enter into marriage with appellant. There is no appeal from that part of the decree annulling the marriage. This appeal comes from the action of the trial court denying the wife's petition seeking reformation of a deed to certain land in Independence County, Arkansas, and the court's refusal to declare a constructive trust in her favor on the real property.

Lillian Bennett, a widow since 1964, met Donald McIntire in May of 1971 at Albuquerque, New Mexico, and the parties began living together in December of 1971. They were married on June 21, 1972, in Albuquerque, New Mexico. At the time of the purported marriage her property consisted of $30,000 in a savings account, together with $500 in a checking account and a home in Albuquerque, New Mexico, which was sold after the marriage for a net return of $18,619.12. Lillian Bennett also owned furnishings from a six-room house, a 1962 Lark automobile, and some tools which had formerly belonged to her first husband. At the time of the marriage of the parties Donald McIntire had six horses, a truck, and $750.00.

Just before their marriage, on June 8, 1972, the parties contracted to purchase what is described in the proof as 208 acres of real property in Independence County, Arkansas. The total purchase price was $20,000. On June 30, 1972, Lillian made the down paymet of $6,000 out of her Albuquerque Federal Savings account. The balance of $14,000 was financed with annual payments of $1,000. Title to the real property was taken in the name of both parties as husband and wife. After the marriage, Donald moved to Arkansas to live on the land they had purchased. The parties also bought a mobile home, a pickup truck, a furniture moving van, materials for a garage, an air conditioner, welder, tractor, cattle and goats, and some other personal property in

connection with the farm. Lillian McIntire moved to the Independence County farm in December of 1972 after selling her home in Albuquerque, New Mexico. Donald testified that he stayed on the farm full time and built a 38 x 22 foot garage; and that during 1972 he also constructed a pond and a farm road. During the course of the marriage Donald McIntire claims he continued to make improvements on the farm. He testified that he seeded the woods and re-seeded the pulpwood areas. Mr. McIntire claims to have fenced forty acres, and repaired the fences on the remaining acreage. The evidence shows that thoroughbred horses were kept on the farm until the spring of 1979. The record seems to indicate that for all these improvements, Donald furnished the labor and Lillian paid the expenses until the end of 1972. Lillian was the bookkeeper for their operations through 1975, when their joint checking account was terminated. After this, Lillian kept a separate account.

The evidence shows further than for the years 1973 through 1975, Donald McIntire cut timber on the property and sold it for pulpwood. The money was also used to pay expenses on the farm. Land payments on the 208 acres of land from 1973 until 1975 were made by Mr. McIntire obtaining loans from a bank using personal property the parties had purchased as collateral. Monthly payments on these side loans were made out of the joint checking account of the parties through 1975. In 1976 the land payment was made by Lillian with her mother's help. Lillian McIntire's parents lived with the parties in 1976 and, after Mrs. McIntire's father's death, the mother continued to remain on the property. Through Social Security checks and the sale of a home, Mrs. McIntire's parents contributed a total of $13,479.59 toward the living expenses of the parties. Other living expenses were paid from the proceeds of the certain personal property which they had purchased at the time of the marriage.

The record further shows that on September 27, 1976, the parties made an additional loan in the amount of $10,000 which Mr. McIntire used to open a television repair shop in Batesville, Arkansas, and for other business expense purposes.

The record reveals that Donald McIntire had been married six times before he met Lillian. In the late fall of 1976, after his marriage to Lillian, Mr. McIntire was served with papers concerning the support of a child. This child was in the custody of his previous wife, Diane McIntire, in another state. Mr. McIntire testified that Diane had told him that their divorce was final. He later had the records searched and, being unable to locate a divorce decree, Mr. McIntire initiated proceedings and a divorce was granted to him by the Chancery Court of Independence County, Arkansas. This decree terminated the marriage then existing between Donald McIntire and Robbie Diane McIntire, his sixth wife. The decree was shown to Lillian McIntire in 1978 and it was at this point that she definitely knew Donald had not been divorced from his previous wife until February 11, 1977. The record also reveals that Lillian continued to live with Donald until July 11, 1979, when they separated. Lillian then brought this action for annulment, constructive trust, and reformation of the deed; and sought a lien on the real property to recover funds she had invested in the property.

After the case was tried, the chancellor wrote a memorandum opinion; and, later entered a decree finding, among other things:

> That at the time these parties entered into their purported marriage relationship they agreed to pool their assets and thereafter own their assets jointly and to share equally all profits derived from their future business ventures; that each party entered into such relationship freely and without any undue influence and without being subject to any fraud exercised by the other party.

> That the plaintiff's petition for the reformation of the warranty deed recorded at Book B-10, Pages 179-180 of the Independence County Deed Records should be denied and the parties should hold title to the land described in said deed as joint tenants with right of survivorship; likewise, all other assets of the parties, including the TV business known as "Don's TV" located in Batesville, Arkansas, and the horses, and all profits

and issue therefrom, should be owned by the parties as joint tenants.

That the plaintiff's request that a constructive trust should be imposed on all assets owned by the defendant in his name alone should be granted to the end that he shall be deemed to hold title to all property held in his name alone as trustee for the benefit of the plaintiff and the defendant jointly.

That all assets owned by the parties are subject to partition at any time upon the request of either party.

That each party shall faithfully account to the other party for one-half of any profits derived from any of the jointly owned assets or assets held in trust by the defendant.

That each party shall be enjoined from converting any of the jointly owned assets or assets held in trust to his or her own personal use, or any profit from such property, or in any manner attempting to conceal any assets or income therefrom from the other party pending a partition of such assets or a mutually agreed disposition of such assets.

Appellant first argues that the decree of the chancery court is against the preponderance of the evidence. The true test on appeal, however, is whether the decree is *clearly* against the preponderance of the evidence. Rule 52, Arkansas Rules of Civil Procedure. The chancellor, in passing on the disputed facts and applying the law to his findings said in his memorandum opinion:

As to the property division, this seems very similar in my mind to a situation where two partners enter into a speculative business venture which turns out not to be very profitable and then one partner wants to, in essence, cancel the whole deal and be put back in the position that he was in before the venture began. Of course, such action is not proper if both partners wilfully

entered into the business transaction and neither exercised any fraud to induce the other into the transaction.

In this case I find that the evidence preponderates in favor of a finding that these parties wilfully undertook to enter into a marriage that each thought was valid when entered into and that they both wilfully entered into the speculative venture of attempting to establish and run a horse breeding and racing operation. The idea was for the plaintiff to furnish the money and the defendant to furnish the labor and expertise to establish and run the venture. It is true that the plaintiff invested approximately $45,000.00 of her money in the venture while the defendant only invested some $4,600.00 in the venture which consisted of money he earned from cutting pulpwood and repairing televisions after he moved to Arkansas, however, he did invest a great deal of time and effort in the venture.

The central issue pertaining to title to the farm is whether at the time the farm was purchased the plaintiff undertook to make a gift of one-half interest in that farm to the defendant. I find that she did. I find that the essence of their agreement was that she would pay the down payment and that the subsequent payments would be paid from the profits of the farm operation (which, of course, did not materialize) and that the parties would share equally in the ownership and profits from the venture.

I do not find the plaintiff was misled or defrauded concerning the nature of the business venture into which she and the defendant were entering and I presume that since both parties appear to be reasonable people they must have realized the inherent risks involving in breeding, raising, training, and racing thoroughbred horses and the potential for loss of money in such a venture. It appears that the parties did make an excellent investment in the land they purchased, however, the horse breeding operation has been very expensive to date and no income had been derived up to this time.

The plaintiff argues that she would not have invested her money in the horse raising venture if she had known that she was not legally married to the defendant. This may be true, however, it seems equally true that even if she had been legally married to the defendant that she would not have been compelled to invest her separate funds in such a venture but could have instead refused to enter such a venture or she could have if she desired to purchase the farm in her own name thus maintaining the separate identity of her funds. It is easy in this case to feel sympathy for anyone who loses money in a business venture, however, what must be closely examined is whether that person wilfully entered the venture and whether there was any fraudulent conduct involved and in this case I find none. I doubt that the issue of fraud would be involved if this venture had been highly profitable and the plaintiff was reaping half the profits.

So I find that it is not proper in this case to alter or reform the deed to the farm and the parties should hold title as joint tenants with right to survivorship. Likewise, all other assets of the parties, including the TV business and the horses, should be half and half ownership. All of the assets of the parties, in other words, should be considered at the time as being jointly owned assets and subject to either being partitioned at any time upon the request of either party. Since this is an ongoing partnership arrangement between the parties involving all assets owned by either of the parties, both parties are enjoined from attempting to convert any of the assets or income from the assets to his or her own personal use or in any manner attempting to conceal any income or assets from the other party.

Once the proposition is accepted that these parties initially pooled their assets (the legal effect of which would be that each gave the other one-half of his or her assets) in order to enter into their venture and that all activities since then have been on a "joint effort" basis and that all present assets are subject to equal distribution to the parties, then this becomes no different from

any other divorce case as it pertains to division and distribution of assets between the parties.

The record clearly shows appellant gave appellee $2,500 even before the marriage so he could purchase a mare. This was only one of many transactions between them which followed, including the purchase of the land and the speculative venture of using the property in an attempt to establish and operate a horse breeding business. From a careful study of the record we are unable to say that the decree is clearly against the preponderance of the evidence; or that the chancellor's application of the law to those facts was clearly erroneous.

Appellant next argues that the chancellor erred in not reforming the deed, and in denying the imposition of a constructive trust on the real estate supported by an equitable lien on the land. In *Ramsey* v. *Ramsey*, 259 Ark. 16, 531 S.W. 2d 28 (1975), it was pointed out that the fact the consideration paid for property, taken in the two names, belonged to the husband *only* is of little, if any, significance where he is responsible for the title being placed in both names. The presumption is that there was a gift of an interest by the husband to the wife. The reverse is also true. Here the presumption is a gift of an interest by the wife to the husband. This presumption is strong, and can be overcome only by clear, positive, unequivocal and convincing evidence. There being no evidence of fraud in this case, appellant is charged with the knowledge of the legal effect of the deed. *Ramsey* v. *Ramsey*, *supra*. We cannot agree with appellant that the testimony in this record is clear, cogent or convincing that the insertion of both names on this deed was the result of a mistake. Clear, convincing, unequivocal and decisive evidence is required for reformation. *McIntyre* v. *McIntyre*, 241 Ark. 623, 410 S.W. 2d 117 (1966). The chancellor found there was no ground for reformation as the parties intended to vest the title as the deed provided. He also found there was no mistake, fraud or a combination of the two, which demanded equitable reformation of a written instrument. We agree.

Appellant next claims that the court should have at least imposed a constructive trust on the real estate, and given her

an equitable lien for the funds she had invested in the land. The chancellor dealt with this claim in detail in his memorandum opinion, most of which has already been quoted above. We are unable to say that his opinion that the testimony fall shorts of that required to establish the constructive trust requested is clearly against the preponderance of the evidence or was clearly erroneous as a matter of law. Rule 52, Arkansas Rules of Civil Procedure.

Counsel for appellant argues that under Ark. Stat. Ann. § 34-1214 (Supp. 1979) Lillian McIntire could have recovered all of the property invested into this marriage either by herself or her parents had she been validly married to Donald McIntire and received a divorce. She claims it would be inequitable for her to receive less than someone who had entered into a valid marriage and later was granted a divorce. Appellant, however, overlooks the fact that under Ark. Stat. Ann. § 34-1202 (Supp. 1979), she could have filed a petition for divorce. In that event, she could have attempted to take advantage of the statutory exceptions, and the equitable relief, available under § 34-1214. Instead, appellant brought this suit for annulment. She rested her property demands upon a prayer for reformation of the deed, and upon the constructive trust and equitable lien theory. Having done so, and the proof in this case falling short of that required to grant such relief, she is in no position now to claim any benefits because of Ark. Stat. Ann. § 34-1214 either directly or indirectly.

The decree of the chancery court is affirmed. All costs on appeal are to be shared equally by the parties.

PENIX, J., dissents.

MARIAN F. PENIX, Judge, dissenting. I find it ludicrous that a woman who invests $45,000.00 as well as her services as "wife" and homemaker (in contrast to her husband's $4,-600.00 investment) in property held in a tenancy by the entireties suddenly finds she not only is not a wife, but also is only a one-half owner of the property purchased by the couple. Furthermore, she is characterized by the Chancellor as an adult of sound mind who merely invested her life savings

in a high risk operation, thereby becoming a partner of the man who, but for his failure to have a divorce from his *sixth* wife, would be her husband.

(2) as to the property division, this seems very similar in my mind to a situation where two partners enter into a speculative business venture which turns out not to be very profitable and then one partner wants to, in essence, cancel the whole deal and be put back in the position that he was in before the venture began. Of course, such action is not proper if both partners wilfully entered into the business transaction and neither exercised any fraud to induce the other into the transaction. (3) In this case I find that the evidence preponderates in favor of a finding that each thought was valid when entered into and that they both wilfully entered into the speculative venture of attempting to establish and run a horse breeding and racing operation. The idea was for the plaintiff to furnish the money and the defendant to furnish the labor and expertise to establish and run the venture. It is true that the plaintiff invested some $45,-000.00 of her money in the venture while the defendant only invested some $4,600.00 in the venture which consisted of money he earned from cutting pulpwood and repairing televisions after he moved to Arkansas, however, he did invest a great deal of time and effort in the venture.

Marriage in the State of Arkansas is not a business relationship. Marriage is not only a civil contract, it is a social and domestic relationship. Marriage in Arkansas may not be dissolved at the parties' will. Fault must be present in a divorce. The State has a vested interest in the marriage. The motive for entering a marriage is quite different from the motive for entering a partnership. Marriage is entered with the expectation of mutually nurturing, sustaining, and caring for the well being of the marriage partner. From the undisputed testimony of the plaintiff, I find she invested her assets in the real property in Independence County after she married the defendant. They married June 21, 1972. The down payment check for the property is dated June 30, 1972.

Plaintiff testified she would never have spent her $45,000.00 had they not been legally married.

I would reverse and instruct the Chancery Court to impose a constructive trust on the property. Although the Chancellor made a specific finding as to the absence of fraud,[1] he did not state the couple did not have a confidential relationship. In Arkansas a constructive trust will be imposed if it shown by clear and convincing evidence the action which produced the reliance was either done fraudulently *or* by one in a confidential relationship. *Bottenfield* v. *Wood*, 264 Ark. 505, 573 S.W. 2d 307 (1978); *Robertson* v. *Robertson*, 229 Ark. 649, 317 S.W. 2d 272 (1958); *Walker* v. *Biddle*, 225 Ark. 654, 284 S.W. 2d 840 (1955). Restatement, Trusts, Section 45. I can think of no more confidential relationship than that of husband and wife. This was the relationship which plaintiff thought she enjoyed.

Through no fault of her own, plaintiff's marriage was void. Ironically, had she decided to divorce the defendant, she would most likely have been entitled to more than fifty percent of the marital property. Act 705 requires an equal distribution of property unless this is inequitable. The eight factors listed in Act 705 when applied to this case would entitle the plaintiff to more than fifty percent of the property. More specifically, she has contributed to the acquisition of the property as well as contributing services of homemaker.

I would reverse this inequitable decision. Therefore, I respectfully dissent.

---

[1] I might also add I am not convinced there was no fraudulent conduct on the part of the defendant. The plaintiff's testimony, which was not disputed, was that the defendant told her he had been married only twice. When the parties to a lawsuit offer testimony as to matters within their knowledge, and material evidence of one party is not contradicted by the other, it must be presumed to be true. *Lenderman* v. *Lenderman*, 266 Ark. 1000, 588 S.W. 2d 707 (Ark. App. 1979); *Matthews* v. *Lanier*, 33 Ark. 91 (1878); *Miller* v. *Jones, Adm'r*, 32 Ark. 337 (1877). One might question whether the plaintiff would have married and spent her savings on an investment with a man who obviously has a difficult time staying with a woman "until death do us part." Furthermore, who is charged with knowing one's status — be it single or married? Who is in a better position to know whether one is divorced from the sixth spouse and free to marry the seventh?