2013 Ark. App. 391

**Charles JONES, Appellant**

v.

**Myra JONES, Appellee.**

No. CV–12–691.

Court of Appeals of Arkansas.

June 19, 2013.

Ballard & Ballard, P.A., Little Rock, by: Andrew D. Ballard, for appellant.

James Law Firm, by: William O. "Bill" James, Jr., and Lee D. Short, for appellee.

BRANDON J. HARRISON, Judge.

After 19 years of marriage and operating several businesses together, Charles and Myra Jones began dividing their property in this divorce case. They settled on some items but asked the circuit court to divide others. In November 2011, the Independence County Circuit Court held a trial on alimony, marital debt, and the division of some items of property—specifically a house, three vehicles, life-insurance policies, and 35 acres of land near Chinn Springs, Arkansas. Charles appeals the court's division of these property items.

We review divorce cases de novo and look at the circuit court's division of property to see if the court's fact-finding is clearly erroneous or against the preponderance of the evidence. *Baxley v. Baxley,* 86 Ark.App. 200, 205–06, 167 S.W.3d 158, 161 (2004). A finding of fact is clearly erroneous when, although there is evidence to support it, we have a definite and firm conviction that a mistake has been committed. *Id.* Preponderance of the evidence is evidence of greater convincing force and the reasonable inferences that might be drawn to prove the principal facts sought to be established is sufficient to outweigh all other contrary inferences. *Smith v. Magnet Cove Barium Corp.,* 212 Ark. 491, 497, 206 S.W.2d 442, 445 (1947). We defer to the circuit court's superior position to determine the credibility of witnesses and the weight of their testimony. *Id.*

### 1. *The Kyler Road House*

The Joneses lived at 1051 Kyler Road in Batesville, Arkansas for the majority of their marriage. Myra acquired this house in 1978, before she married Charles in 1992. When she got married, she owed approximately $16,000 on the house. During the marriage, Charles and Myra executed several mortgages and revolving lines of credit on the home, and by the time of their divorce they owed about $60,000 in debt on the house. Neither party produced evidence of the Kyler house's value at the time of the divorce.

The trial testimony did reveal that the Joneses used one or more of the house's mortgages to pay for the heating-and-air business Charles started in 1999. Myra had worked for that business since 1999, without compensation. There was also evidence that the Joneses used loans against the house to supplement their income and pay for medical expenses. The parties agreed that several basic repairs, including a new roof and new floors, were made to the house during the marriage, and that they had paid for the new roof from a $10,000 insurance check. Although the couple lived in the Kyler house together and made mortgage payments on the house with marital property, it remained titled solely in Myra's name during the marriage.

After the divorce trial, the circuit court ruled that the Kyler house was "premarital property as evidenced by the deed granting Ms. Jones ownership of such property prior to marriage," and that "Mr. Jones shall not be entitled to any interest in said home."

As his first point on appeal, Charles says that the circuit court's decision that he had no interest in the house was clearly erro-

neous because the court failed to consider that he had used marital property to reduce the mortgages and to improve the house. In Charles's view, the court committed a reversible error because it failed to apply an "active appreciation analysis" when determining whether he had a marital-property interest in the house. He also argues that it is unfair for the court to order him to pay half of the debt secured against the house but not award him an interest in it. He asks us to reverse the circuit court's order, find the home to be marital property, and give him an interest in it.

■ The purpose of the property-division statute is to ensure that a court divides property fairly and equitably under the circumstances. *Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001). Subsection 9–12–315(b)(1) of the statute exempts property acquired before marriage from the definition of marital property. Ark.Code Ann. § 9–12–315 (Repl. 2009). Subsection 9–12–315(a)(2) requires that all property a person owned before marriage be returned to its owner upon divorce. This means that, as a general rule, a spouse's property acquired before marriage remains his or her exclusive property upon divorce. Our caselaw created a narrow exception to this rule when marital funds have ⎣4been used to improve nonmarital property or reduce its debt. *Box v. Box*, 312 Ark. 550, 554, 851 S.W.2d 437, 440 (1993).

■ The circuit court's ruling that Charles had no interest in the Kyler home is not clearly erroneous. Myra acquired the house in 1978, before she married Charles, and she remained the sole owner of it during the marriage. The house falls within the statute's provisions that a spouse's property acquired before marriage remains his or her separate property

upon divorce. Ark.Code Ann. §§ 9–12–315(a)(2) and (b)(1).

Charles correctly notes the exception to the statutory rule. But the narrow *Box* exception, 312 Ark. at 554, 851 S.W.2d at 440, does not apply here, because he failed to show that his contributions to the marriage reduced the debt on the Kyler house or significantly improved it. Unlike the husband in *Box*, Charles did not pay down the original-debt amount that Myra owed on the house after she entered the marriage. *Id.* Instead, Myra showed the court that Charles's contributions to the marriage increased, not decreased, the amount Myra owed on the house. Specifically, the circuit court found that the debt on the Kyler house increased from $16,000 to $60,000 during the marriage. Myra also produced evidence that the house was titled in her name alone, before and during the marriage. So the court did not clearly err when it ordered that Myra remain the sole owner of the Kyler house and that Charles had no interest in it. *Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001).

### 2. *The Three Vehicles*

Three vehicles that the Joneses bought during their marriage are also at issue. One is a 2000 Ford F–250 pickup truck. During the divorce trial, Charles testified that the ⎣5Ford truck was paid off and worth about $5,000. The second vehicle is a 2003 GMC work truck that Charles used for his heating-and-air business. And it was secured by a note from Citizens Bank for approximately $8,900; Charles testified that he thought it was worth around $8,000. The third vehicle, a 2007 Mercedes CLK 550, was an anniversary present for Myra. It was titled in Charles's name. Charles thought the Mercedes was worth around $21,000—the record shows the payoff amount was $22,108.

The court ruled that the three vehicles were marital property. The court also ordered that all other marital property, real and personal, be sold to pay off the marital debt. The final order divided the vehicles this way: Charles got the GMC and Ford trucks; Myra got the Mercedes. Moreover, Myra and Charles were to be "equally responsible for the debts on all three marital vehicles listed in the decree." And if the money from the marital-property sale did not cover the marital debt, Myra would not be responsible for paying the remaining debt on the GMC work truck.

Charles first argues that the circuit court erred when it divided the vehicles, because it did not recite "its basis and reasons for the unequal division in its order." The second part of Charles's argument deals with the debt on the vehicles. Charles says that it is unfair for the court to order him to pay approximately $15,506 of debt for $14,000 worth of automobiles (his two trucks) while Myra got the Mercedes, worth $21,000, with only $15,506 of debt. He asks us to reverse the circuit court, order that all the vehicles be sold, and divide the remaining debt equally.

Marital property must be divided equitably in a divorce. Ark.Code Ann. § 9–12–315 (Repl.2009); *Williams v. Williams*, 82 Ark.App. 294, 108 S.W.3d 629 (2003). Arkansas Code Annotated section 9–12–315(a)(1)(A), provides that all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. The statute states that when a court finds such a division to be inequitable, the court must state, in its order, why it did not equally divide the marital property. Ark.Code Ann. § 9–12–315(a)(1)(B).

■ Courts do not have to be mathematically precise when distributing property; the statute's thrust is an equitable, not

a precise, division. *Williams*, 82 Ark.App. at 313, 108 S.W.3d at 641. A circuit court has broad powers and a measure of flexibility to apportion property (nonmarital and marital) to achieve an equitable division. *Id.* The critical inquiry is how the total assets are divided. *Id.* Our standard of review matters here: we will not substitute our judgment as to how the court should have divided the property; we only decide whether the order is clearly wrong. *Id.*

■ By Charles's own admission, the court gave him about 40% of total value of all three cars ($14,000 out of $35,000) when it gave him sole ownership of the two trucks. Myra received about 60% of the total value of the vehicles when the court awarded her the Mercedes as her separate property ($21,000 out of $35,000). The court could have ordered that the vehicles be sold with the rest of the marital property, but it did not; it instead chose to distribute the marital property by giving each spouse his or her own vehicle as separate property. It gave Charles two trucks and Myra one car. This arrangement allowed the parties to keep the vehicles they normally drove and preserved their ability to have transportation. Because the court divided the vehicles equitably, the court was not required to state its reasons for its "unequal" division as Charles has argued. The court could not give the Joneses a mathematically equal share in the three vehicles unless the court ordered that all three vehicles be sold, but, as we have said, mathematical precision is not required. *Williams, supra.* The distribution of the vehicles' monetary value favors Myra, but we cannot say that the court committed a reversible error.

Charles's second argument about the justness of the court's division of the debt in light of the vehicles' values is not legally relevant to whether the court made an

unequal distribution of the vehicles as marital property. *Williams, supra.* The legally important point is that the court committed no reversible error in how it divided the Joneses' three vehicles.

### 3. *The Life-insurance Policies*

■ In its final order, the court ordered that

[t]he parties shall split equally the cash values of the life insurance policies acquired during the marriage, namely: American General Contract Number: 01841257; Modem Woodmen of America Certificate Number 4726527; United Fidelity Policy Number 50–0 0014920; New York Life Insurance Company Policy Number 26 750 999; and Met Life Policy Number 608207255M. Add. 27.

These life-insurance policies first came up during the divorce trial, because Charles did not produce them during the discovery phase. Myra believed that "they were hidden." During trial, she asked the court to give her one-half of the cash value of the policies. On the witness stand, Charles admitted that the policies were not disclosed during discovery though Myra's written discovery had requested the information.

Charles testified that his father bought the policies for him years ago. Charles also said that, possibly, two of the policies had been transferred into Myra's name last year, and that he had not purposefully failed to disclose the policies. He testified that he did not know about some of these policies because they were sent to his sister's address and he never saw them.

William Jones, Charles's father, testified briefly about the insurance policies. He said that he bought them when Charles was a young child. He also testified that he owned the policies until about two years before the divorce proceedings, when he transferred ownership to Charles.

Without objection, the court received, as evidence, the policy information Myra brought forth. There was no testimony, however, on (1) whether the policies William purchased were term or cash-value policies, (2) the exact number he purchased, or (3) the policies' value. There was some indication that marital funds were used to pay the premiums the past two years, but the evidence suggests that Myra was never made a beneficiary of the policies.

Here, Charles argues that the court clearly erred because it did not find that the cash value of the life-insurance policies were his "sole and separate property" under Ark.Code Ann. § 9–12–315(b)(5), and that the court failed to explain its decision. Myra counters that we can affirm the court's decision because it equally divided the policies. She also argues that this issue is not preserved for our review because Charles did not contest the court's division in his posttrial motion to amend the judgment.

Contrary to Myra's preservation point, Charles did not have to challenge the court's division of the life-insurance policies in his Rule 59 motion to preserve the issue for an appeal. Ark. R. Civ. P. 59(f) (2012). But Charles does have the burden of bringing up a record sufficient to demonstrate that the circuit court erred. *Troutt v. Matchett,* 305 Ark. 474, 476, 808 S.W.2d 777, 778 (1991). Charles has not demonstrated that the circuit court's order that "[t]he parties shall split equally the cash values of the life insurance policies acquired during the marriage" is clearly wrong. The record does not sufficiently establish that the life-insurance policies were either acquired before the marriage or given as a gift, as Charles argues. Because Charles has failed to bring up a record sufficient to demonstrate that the circuit court erred, we affirm the court's ruling on the policies. *Id.*

#### 4. *The Chinn Springs Property*

Charles and Myra owned 35 acres on Chinn Springs Road, and they asked the court to divide the property following their divorce. At trial, the court received as evidence a warranty deed that conveyed the Chinn Springs property to Charles and Myra, as husband and wife, on 31 January 1997. The testimony showed that the Joneses mortgaged the Kyler house in 1997, within a few days of when they signed the warranty deed conveying the Chinn Springs property to them jointly, as husband and wife.

There was a dispute during the divorce trial on whether the Joneses intended for Charles's name be put on the Kyler house deed when Myra's name was put on the Chinn Springs Road property deed. Both parties agreed that their lender would not loan money against the unimproved land on Chinn Springs Road, so they sought to mortgage the Kyler house instead. Charles testified that a private meeting between Myra and someone at the bank occurred when Myra signed the mortgage in 1997. Charles said that he thought the papers he signed in 1997 added his name on the Kyler house. He also told the court that he would not have deeded Myra a half interest in the Chinn Springs property had he known he would have no interest in her house. Myra said that she and Charles had no such agreement, that Charles never asked to be a co-owner of the Kyler house, and that they had never discussed it.

The court ruled that the 35 acres on Chinn Springs Road was marital property because Charles had gifted it to Myra in January 1997. Charles argued at trial, and renews his argument here, that the 35 acres was his separate property and that it should not be divided; he contends that a constructive-trust theory bars this act. Specifically, he says he and Myra shared a confidential relationship and that caused him to rely on Myra to his detriment. Charles also says that the court should have reformed the deed and held the property in constructive trust as his separate property upon the divorce.

When a husband and wife hold real property as tenants by the entirety, our courts presume that the spouse who furnished the consideration made a gift to the other spouse—and this presumption can only be rebutted by clear-and-convincing evidence. *Keathley, supra.* Further, absent evidence of fraud, marriage partners are charged with knowing the legal effects of a warranty deed conveying property to them as husband and wife. *Ramsey v. Ramsey,* 259 Ark. 16, 21, 531 S.W.2d 28, 31 (1975).

A court may hold property in constructive trust when one party abuses its power over the other party and the parties have a confidential relationship. A confidential relationship exists between two persons when one has secured the confidence of the other and claims to act with the other's interest in mind. *Henry v. Goodwin,* 266 Ark. 95, 583 S.W.2d 29 (1979). A marriage can become a confidential relationship, but this is not always so. *Compare McIntire v. McIntire,* 270 Ark. 381, 388, 605 S.W.2d 474, 478 (1980) (finding confidential relationship between husband and wife when deed was executed) *with Robertson v. Robertson,* 229 Ark. 649, 652, 317 S.W.2d 272, 274 (1958) (finding no confidential relationship between husband and wife when deed was executed).

A court may impose a constructive trust where a person holding title to property is subject to an equitable duty to convey it to another and not conveying it would unjustly enrich the title holder. *Betts v. Betts,* 326 Ark. 544, 547, 932 S.W.2d 336, 337 (1996). To impose a constructive trust, the moving party must

show full, clear, and convincing evidence of its necessity, leaving no doubt with respect to the necessary facts. The burden is especially great when a title to real estate is sought to be overturned by parol evidence. *Id.* at 548, 932 S.W.2d at 338. It is no different when one spouse advocates for the court to find a confidential relationship and impose a constructive trust; the general presumption of spousal gift is strong—it can only be overcome by "clear, positive, unequivocal and convincing evidence." *McIntire,* 270 Ark. at 388, 605 S.W.2d at 478.

The circuit court did not err when it rejected Charles's constructive-trust request. Charles's disputed testimony that he and Myra had an oral agreement that her name would be on his property and his name would be on her property is not enough. Myra testified the opposite way, and the circuit court was entitled to credit her testimony over Charles's. *Betts,* 326 Ark. at 550, 932 S.W.2d at 339. The circuit court correctly ruled that the 35 acres the Joneses owned on Chinn Springs Road was marital property. The court based its ruling on the presumption that Charles gifted an interest in the Chinn Springs property to Myra—as the property deed evinces—and the law charges the Joneses with knowing the legal effect of that deed. *Ramsey,* 259 Ark. at 21, 531 S.W.2d at 31.

We affirm the court's division of the Kyler house, the three cars, the life-insurance policies, and the Chinn Springs property because the property division was neither clearly erroneous, nor clearly against the preponderance of the evidence.

Affirmed.

WYNNE and WHITEAKER, JJ., agree.