Cite as 2020 Ark. App. 479

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-46

| | |
|---|---|
| RANDALL MCKINNIS<br><br>APPELLANT<br><br>V.<br><br>BRENDA MCKINNIS<br><br>APPELLEE | Opinion Delivered October 21, 2020<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-18-1018]<br><br>HONORABLE MARCIA R. HEARNSBERGER, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

### BRANDON J. HARRISON, Judge

Randall McKinnis appeals the distribution of certain property by the Garland County Circuit Court in his divorce from Brenda McKinnis. Specifically, Randall contends that the circuit court erred in (1) refusing to make an unequal division of the equity in the marital home, (2) finding that a bank account in Brenda's name was premarital property, (3) finding that Brenda's vehicle was premarital property, and (4) awarding the parties' two dogs to Brenda. We affirm in part and reverse and remand in part.

The parties married on 12 May 2015 but separated on or about 12 September 2018. Brenda filed for divorce in December 2018; Randall answered and counterclaimed for divorce in January 2019. Ultimately, the parties agreed on the distribution of property except for the items at issue in this appeal. In addition, Randall waived the requirement of corroboration of grounds and withdrew his counterclaim for divorce.

The circuit court convened a final hearing on 8 August 2019. Randall testified that he is sixty-one years old, unemployed, and receives $1279 in retirements benefits every month. He explained that he was requesting an unequal division of the proceeds from the sale of the marital home because he had contributed more money to the down payment ($113,900 as opposed to $71,000 from Brenda). He acknowledged that during the marriage, the bills were paid out of the parties' joint checking account, to which he contributed $1279 a month and Brenda contributed an average of $2400 a month. Randall said he also received stock dividends of approximately $200 a year that he contributed to the joint checking account, and he claimed to have closed both a checking account and savings account and deposited those monies into the joint checking account, but he had no records of those transactions and did not know the amounts contributed. He agreed that Brenda had asked him to at least get a part-time job "once or twice" during the marriage. He also testified that he did not have proof of payment for the two dogs bought during the marriage. He testified that Brenda's vehicle, an Audi Q5, was bought during the marriage, but agreed that it was paid for through Brenda's corporate checking account.

When questioned about his affidavit of financial means, Randall agreed that he had not updated it since March 2019 but said that his expenses had increased. He said he now had a checking account and a savings account, and he acknowledged that he also had a retirement account worth $286,243, from which he receives his monthly payment of $1279. He also testified that in November 2019 he would begin receiving Social-Security benefits of "around fifteen to seventeen hundred." When asked if he was capable of working, Randall stated, "It depends. I have got leg problems and some lower back problems and

2

good days and bad days." He later explained that he has neuropathy in his legs as a side effect of his diabetes. He agreed his health problems did not interfere with his ability to hunt or fish.

On cross-examination, Randall said it cost approximately $1800 to $2000 to maintain the marital home, which was currently empty. When asked again about the accounts he had closed at the beginning of the marriage and deposited into the parties' joint checking account, Randall estimated, "[m]aybe five or six thousand in each account. Maybe ten thousand in one of the accounts." He also agreed that there was a period of time from October 2017 to January 2018 in which Brenda did not pay herself from her business funds. He explained that during the marriage, he had also accidentally discovered a separate personal account that Brenda maintained, which she said she had "always had." Randall estimated that Brenda had deposited around $18,000 to $20,000 to that account during the marriage. Randall claimed that those deposits came from her business profits during the marriage and that the money should be considered marital property. He also explained that the parties' two dogs had been purchased during the marriage and that he would like to have at least one of the dogs if not both.

Brenda testified that she was sixty-one years old and had been a hair stylist for almost forty-two years. She stated that she works full time, five or six days a week, eight to twelve hours a day. She said she operates out of a corporation, Brenda's Inc., which has its own corporate banking account. She disagreed that the proceeds from the sale of the marital home should be unequally divided and testified that the amount she and Randall contributed to the down payment "was about equal." She explained that period of time that she did

3

not pay herself as follows: "I wasn't making much money when I moved over here [to Hot Springs]. I had to build up a clientele again and there wasn't much money in the business. I mean I just did not give myself a paycheck because there wasn't that much coming in." As to her separate personal account that Randall had been unaware of, Brenda explained that she gets a monthly check deposited into that account from her ex-husband's retirement account (referred to as the "APERS account") and that she started receiving those funds in 2007. She denied depositing $18,000 to $20,000 into that account; instead, she said that during the course of the marriage, she deposited four checks into that account totaling $2400. Brenda said her two adult sons are also on the account, and she asked that the account be declared nonmarital property. She also explained that she had paid for both of the dogs with funds from the APERS account. Regarding her vehicle, she said it was titled to "Brenda's Inc. or McKinnis, Brenda M." and paid for with funds from her corporate account. She also averred that when purchasing the Audi she had traded in a Lexus, which was premarital property.

On cross-examination, Brenda confirmed that Brenda's Inc. normally pays her approximately $600 a week. She also confirmed that $600 a month is deposited into the APERS account from her ex-husband's retirement. She also said that in addition to her four $600 deposits into the account, she "may have randomly put just a few dollars—some monies in there[.]" She acknowledged that she provided records for that account dating back only two years—to December 2017—although defense counsel had asked for records going back five years. Brenda admitted that she deposited $4360 into the APERS account on 12 May 2015, the date of her marriage. She also conceded to numerous deposits made

4

to the account between June 2015 and October 2018 totaling over $14,000. She agreed that the deposits were made during the marriage. She said she did not know the source of the funds "off the top of [her] head" but that some of it may have been from tips or birthday money. She also said that she had sold some furniture that she owned before the marriage. As for her vehicle purchase, she estimated that she received $15,000 as trade-in value for her Lexus and paid another $30,000 out of her corporate account for the Audi.

At the hearing's conclusion, the court requested that both parties prepare proposed findings of fact and conclusion of law. On 8 October 2019, the circuit court issued a letter opinion and made the following findings:

> THE COURT FINDS both parties contributed pre-marital funds to buy the home which they clearly intended to give each other for their marital home. Neither party met the burden of disproving the presumption of an equal division of the marital home[.] . . .
>
> Plaintiff had a pre-marital corporation, Brenda's Inc., to maintain her hairdressing business and continued this after the marriage. Plaintiff traded a vehicle owned prior to the marriage by Brenda's, Inc., toward the purchase of an Audi, and the car was titled in the name Brenda's, Inc., or McKinnis, Brenda M. THE COURT FINDS the Audi is granted to Plaintiff, as it was acquired in exchange for property acquired prior to the marriage and income from property owned prior to the marriage. Defendant has a truck which he will retain as his personal property.
>
> Plaintiff maintained a bank account in her maiden name of Mann with her two sons at Regions bank ending in ★7091 which is funded with proceeds from Plaintiff's ex-husband's APERS retirement account each month. THE COURT FINDS this account to be pre-marital property. Defendant has failed to provide credible evidence he is entitled to any of the funds deposited at any time into this pre-marital account.
>
> . . . .
>
> The parties had two dogs during the marriage. The dogs have been in Plaintiff's possession since the parties ceased living together in May 2018. Plaintiff paid for the dogs with funds from her pre-marital account. She also

5

paid for their training, maintenance and grooming.  THE COURT FINDS
an unequal distribution of this personal marital property is warranted.  The
dogs are granted to Plaintiff, as she has primarily contributed to the acquisition
and preservation of the pets.

The court issued a formal written order including these findings on 21 October 2019, and

Randall has timely appealed the circuit court's order.

A circuit court's findings of fact with respect to division of property in domestic-

relations cases will be affirmed unless clearly erroneous or clearly against the preponderance

of the evidence.  *Baker v. Baker*, 2013 Ark. App. 543, 429 S.W.3d 389.  A finding is clearly

erroneous when, although there is evidence to support it, the reviewing court is left with a

definite and firm conviction that the circuit court has made a mistake.  *Hunter v. Haunert*,

101 Ark. App. 93, 270 S.W.3d 339 (2007).  In reviewing a circuit court's findings of fact,

we give due deference to the circuit court's superior position to determine the credibility

of the witnesses and the weight to be accorded their testimony.  *Fletcher v. Stewart*, 2015

Ark. App. 105, 456 S.W.3d 378.

Arkansas Code Annotated section 9-12-315(a) (Repl. 2015) provides that all marital

property shall be distributed one-half to each party unless the court finds such a division to

be inequitable.  The overriding purpose of section 9-12-315 is to enable the court to make

a division of property that is fair and equitable under the specific circumstances.  *Keathley v.*

*Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001).  The circuit court has broad powers to

distribute property in order to achieve an equitable distribution.  *Id.*

I. *Unequal Division of Marital Home*

Randall argues, as he did below, that because he contributed more to the down

payment of the marital home, he should receive an unequal distribution in his favor of the

6

proceeds of the sale of the marital home. He cites case law pertaining to property held akin to tenancy in common: "It is a well settled rule that property acquired for a consideration paid in part out of community funds and in part out of separate funds of one of the spouses is in part community and in part separate property." *McCormick v. McCormick*, 2012 Ark. App. 318, at 6, 416 S.W.3d 770, 775 (quoting *Potter v. Potter*, 280 Ark. 38, 48, 655 S.W.2d 382, 388 (1983)). He concludes that the circuit court's equal division of the proceeds from the sale of the marital home is not a "fair and equitable division" as mandated by statute and the case law.

In contrast, Brenda notes the well-settled presumption that property placed in both spouses' names is held in tenancy by the entirety and is marital property. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). Clear and convincing evidence is required to overcome this presumption. *Powell v. Powell*, 82 Ark. App. 17, 110 S.W.3d 290 (2003). And unless that presumption is overcome, the property shall be distributed one-half to each party. Ark. Code Ann. § 9-12-315(a). Moreover, when a husband and wife hold real property as tenants by the entirety, it is presumed that the spouse who furnished the consideration made a gift in favor of the other spouse, and this presumption must also be rebutted by clear and convincing evidence. *Collins v. Collins*, 2010 Ark. App. 506. And even assuming Randall did contribute more to the down payment, that fact alone is not enough to overcome the presumption. *See Lyle v. Lyle*, 15 Ark. App. 202, 691 S.W.2d 188 (1985) (holding that chancellor erred in crediting each party with the amount contributed toward the down payment on real property held as tenants by the entirety when presumption that the spouse

7

who furnished the consideration made a gift in favor of the other spouse had not been rebutted by clear and convincing evidence).

The parties presented conflicting testimony regarding their relative contributions to the purchase of the marital home, but both parties agreed that there was no agreement or discussion concerning how the proceeds would be split if the house was later sold. In addition, during the final hearing, Brenda's counsel described the marital home as property held as tenants by the entirety with no objection from Randall. Under these circumstances, we hold that the circuit court correctly applied the presumption pertaining to property held as tenants by the entirety and correctly found that neither party had overcome that presumption by clear and convincing evidence. Therefore, the circuit court did not err when it refused to grant Randall an unequal distribution of the marital residence.

## II. *APERS Account*

On this point, Randall argues that Brenda had no explanation for the large deposits made into the APERS account in addition to her ex-husband's retirement benefit, other than suggesting some of the amounts were tips, gifts, or proceeds from the sale of furniture. In addition to the over $18,000 in deposits conceded by Brenda at the hearing, Randall documents another $38,000 deposited into the account before the divorce decree was entered. Randall contends that Brenda's only source of income during the marriage was her job as a hair stylist, and she admitted that marital earnings were deposited into the account. He asserts it was Brenda's burden to show that the monies deposited into the account were her separate non-marital property, that she failed in meeting that burden, and

8

that the circuit court erred in misplacing the burden of proof and finding that he had "failed to provide credible evidence he is entitled to any of the funds" deposited into the account.

Brenda argues that Randall "gave no credible testimony or evidence as to the nature of the deposits in question" and that there is no basis to assume the deposits were comprised of her income. She also criticizes Randall's failure to introduce a portion of the bank statements he relies on and asserts that the circuit court discounted Brenda's testimony on the matter as speculative.

We reverse and remand on this point. All earnings or other property acquired by each spouse after marriage must be treated as marital property unless falling within one of the statutory exceptions contained in Ark. Code Ann. § 9-12-315(b). *Wagoner v. Wagoner*, 294 Ark. 82, 740 S.W.2d 915 (1987). The burden is on the party who asserts an interest in property to establish that it is in fact separate property not subject to division. *Aldridge v. Aldridge*, 28 Ark. App. 175, 773 S.W.2d 103 (1989). It was not Randall's burden to prove entitlement to funds procured by Brenda during the marriage; it was Brenda's burden to show that the sizeable amount of money deposited into the APERS account was not marital property. As to Brenda's objection to the evidence, she read the amounts of the deposits into the record, so a paper record did not need to be introduced. And her reference to the circuit court's speculative ruling is off kilter—the court made that statement prior to defense counsel showing Brenda the bank statements and having her read the deposits aloud. The court erred when in granted Brenda sole ownership of the entire balance in the APERS account. We therefore reverse that decision and remand the case for a reconsideration of this issue in a manner consistent with this opinion.

### III. *The Audi*

The circuit court awarded the Audi to Brenda, finding that "it was acquired in exchange for property acquired prior to the marriage and income from property owned prior to the marriage." Randall asserts that according to Brenda's own testimony, she purchased the Audi by trading in her Lexus, which was nonmarital property, and paying the remainder, approximately $30,000, with funds from her corporate account. Again, her only income during the marriage was from her job as a hair stylist, and presumably that income funded her corporate account. The Audi is only used for Brenda's personal use and not any use associated with the business. Randall contends that the Audi is presumably marital property, as it was purchased during the marriage, and he reiterates that it was Brenda's burden to show that it was nonmarital property. According to the evidence, Randall argues, only one-third of the price of the car came from nonmarital property; the remainder of the purchase price, $30,000, came from marital funds, and he is entitled to half of those funds.

Brenda responds that Randall is once again assuming that marital funds were used to purchase the vehicle without providing evidence to support that assumption. She argues: "According to the evidence, a car was purchased by the corporation. There was no testimony or exploration of Brenda's Inc., its assets and liabilities at the time of the marriage or at the time of the divorce. There was no documentation produced indicating any contemporaneous deposits of marital income into the account." Thus, she asserts the circuit court correctly held that Randall failed to prove his entitlement to property belonging to her premarital corporation.

10

We reverse and remand on this point, too. The vehicle is presumed to be marital property, and while a portion of the purchase price of the vehicle did come from Brenda's premarital property, the remainder of the purchase price came from (presumably) marital funds. The vehicle is also titled in both Brenda's company name and Brenda's name individually. Brenda must show that the Audi is nonmarital property, and it is within the purview of the circuit court to determine what value, if any, is owed to Randall or if there should be an unequal distribution of marital property in Brenda's favor. The court erred by granting Brenda sole ownership of the Audi. We therefore reverse that decision and remand the case for reconsideration on this issue in a manner consistent with this opinion.

IV. *The Dogs*

Brenda purchased the two dogs during the marriage, which raises the presumption that they are marital property. The circuit court found that Brenda paid for the dogs with funds from her premarital account but apparently still treated the dogs as marital property, because it also found that an "unequal distribution of this personal property is warranted" and awarded custody of both dogs to Brenda, reasoning that she had "primarily contributed to the acquisition and preservation of the pets." The dogs had also been in Brenda's sole custody since the parties ceased living together in May 2018.

Randall argues that to the extent the court found that the dogs were purchased with nonmarital funds, the court erred, because Brenda testified that the dogs had been purchased from tip money, which was marital property. He also contends that the court erred in finding that Brenda was primarily responsible for the "acquisition and preservation" of the pets, noting that by her own testimony, Brenda worked five or six days a week, eight to

11

twelve hours a day, and he was the sole caregiver for the dogs while she was at work. He concludes that a fair division of this marital property is for each party to have one dog.

Brenda asserts that the circuit court did not find the dogs were nonmarital property; instead, the court correctly made an unequal distribution of marital property to her because she had "primarily contributed to the acquisition and preservation" of the dogs. She argues that the circuit court's decision was supported by her testimony that she paid for the dogs and took care of their training and grooming. In addition, the dogs had been in her sole care since May 2018.

Although the parties disagreed on who was the primary caregiver of the dogs while the parties were married, the circuit court was within its discretion to find Brenda's testimony more credible and unequally distribute the ownership of the dogs in Brenda's favor. We hold that the circuit court did not clearly err when it gave the dogs to Brenda.

Affirmed in part; reversed and remanded in part.

KLAPPENBACH and HIXSON, JJ., agree.

*Churchwell Law Office*, by: *Joseph Churchwell*, for appellant.

*Legacy Law Group*, by; *Michelle Strause*, for appellee.