Cite as 2022 Ark. App. 309

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–21–139

| | |
|---|---|
| ANDREW RICHARDS<br><br>APPELLANT<br><br>V.<br><br>TRACEY RICHARDS<br><br>APPELLEE | **Opinion Delivered** September 7, 2022<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR-19-1737]<br><br>HONORABLE JOANNA TAYLOR, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**BRANDON J. HARRISON, Chief Judge**

Andrew Richards appeals the Washington County Circuit Court's order in his divorce from Tracey Richards. He argues that the circuit court erred in finding the Winslow property was marital property and in treating the Fidelity 401(k) as marital property. He also contends that the alimony award exceeds his ability to pay and that the division of property and debt, combined with the child-support and alimony awards, creates an inequitable result. We affirm the court's designation on the Winslow property but reverse and remand on its distribution of the Fidelity 401(k). Given our ruling on the 401(k) account, we also remand the alimony issue for reconsideration.

The parties married in December 2003 and have two children. In October 2019, Tracey filed for divorce and asked for custody of the children (ages fourteen and ten), child support, and spousal support. The day after she filed her complaint for divorce, Tracey moved for an emergency hearing on custody, child support, and spousal support. The motion

explained that Tracey was a full-time homemaker, did not have an income, and had been denied access to the parties' jointly owned finances and lines of credit. After a temporary hearing, the court ordered Andrew to continue paying marital and family expenses such as mortgages, car insurance, health insurance, and the phone bill. The court also ordered that Andrew pay $2,000 a month in spousal support.

The parties attended mediation and agreed on custody and a visitation schedule. The court convened a final hearing on 16 September 2020 to decide the issues of property division, debt division, child support, and spousal support. Andrew's testimony revealed the following. He is employed by the City of Fort Smith and receives a base salary of $110,000. He also receives a car allowance of $450 a month. His affidavit of financial means filed the day before the hearing listed $10,246.52 in monthly expenses. Andrew, a certified public accountant, was employed from 1997 to 2018 at BKD, LLP. He was asked to resign in August 2018 because he was not meeting the company's expectations. During his employment with BKD, his highest gross income exceeded $500,000.

The parties' marital home is referred to as the Winslow property, which Andrew claimed as his separate property because he purchased it in 2001, prior to the marriage. Tracey worked only parttime off and on during the marriage, and she did not contribute to paying the Winslow property mortgage. The property was refinanced in 2005, during the marriage, with both Andrew and Tracey on the mortgage, at the requirement of the bank. They received approximately $30,000 cash back from refinancing; that money was used to pay off marital credit-card debt. Also, a new deed was issued to Andrew in his capacity as "a married person." The parties also purchased a home in Maumelle during the marriage.

Andrew has two Ameritrade accounts: an IRA and a bank account. He claimed the

2

Ameritrade IRA as a separate premarital account because the only contributions to the account were made in 2000 and 2001, prior to the marriage. Andrew also has a bank account at Arvest and a Fidelity 401(k) plan that was established in 1998, before the marriage. Andrew owns a Citi Mastercard (in his name only) and makes payments on that card from his Arvest account. He also has an Amazon credit card through Chase. Andrew also borrowed approximately $142,000 from his father to cover family expenses while he was unemployed.

Andrew asked that the court award him the Winslow property and that the Maumelle property be sold and the proceeds split between the parties. As to certain debts, including tax obligations, credit cards, and the debt to his father, Andrew asked that the court allow him to liquidate the Fidelity 401(k), pay the debts, and split the remainder with Tracey.

Tracey testified next and said she and Andrew looked at properties together in 2001, while they were dating, and they planned on living together after a home was purchased. She understood that "[she] also owned [the Winslow] home," and she was told that her name "was on it." But she did not contribute any money toward the down payment of the home. After they married in 2003, Andrew did not want her to have a job. She claimed to know nothing of her own family's finances.

After Tracey filed for divorce, the Winslow property sustained water damage, which required Tracey and the children to relocate to a rented duplex at a cost of $1,250 a month. Her affidavit of financial means also listed monthly household expenses at $400 and a $959 car payment, though the car would soon be paid off. The affidavit did not include costs for health insurance and medications. Tracey did not continue her education past high school; she has applied for jobs but has generally been told she does not have the requisite computer skills or work experience.

3

Don Richards, Andrew's father, confirmed that he had loaned money to his son and that the current balance on the loan was approximately $140,000. They planned for Andrew to repay the money once the divorce was final and he could access the money in his 401(k).

After receiving testimony and documentary evidence from both parties, the circuit court took the matter under advisement. The court announced its decision from the bench several days later, but the court's written order was not entered until 8 December 2020. In that order, the court determined that Andrew earns a gross income of $7,306.67 a month and that Tracey earns a gross income of $2,310 a month. So the combined gross income is $9,616.67, which results in a child-support obligation of $1,485 for their two children according to the child-support chart. Accordingly, Andrew was ordered to pay a total of $1,095 a month for child support.

In addition, the court awarded Tracey monthly rehabilitative and permanent alimony in the amounts of $312.50 and $2,310, respectively. Rehabilitative alimony was awarded for twenty-four months. During those twenty-four months, Andrew's child-support obligation was reduced to $1,042 a month.

As to the Winslow property, the court found that Andrew had gifted the property to the marriage when he executed a new deed in 2005, "deeding said property from Andrew Richards, a single person, to Andrew Richards, a married person." The court granted the property to Tracey, subject to the mortgage, and granted the Maumelle property to Andrew, subject to the mortgage.

Regarding the financial accounts, the court found that Andrew's Ameritrade IRA, worth approximately $95,000, is nonmarital property. The Fidelity 401(k) plan, worth approximately $494,381.99, is marital property, but contributions to the plan from 1998 to the

date of the marriage are nonmarital. Then, however, the court ordered that the entire balance, including the nonmarital contributions, be divided equally between the parties.

The court also found that the parties had accrued $220,632 in marital debt. This amount includes car payments, credit-card debt, and the loan from Don Richards. Also included in that total is 2019 income-tax liability in the amount of $820, 2019 Pulaski County personal property tax in the amount of $966, and Tracey's attorney's fees totaling $25,000. The court held the parties each responsible for one-half of the marital debt and ordered the parties to apply the proceeds of the 401(k) to the marital debt. Andrew has timely appealed the order.

We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Darcey v. Matthews*, 2017 Ark. App. 692, 537 S.W.3d 780. A circuit court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Dial v. Dial*, 74 Ark. App. 30, 44 S.W.3d 768 (2001). In reviewing a circuit court's findings, we defer to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001).

Arkansas Code Annotated section 9-12-315 (Repl. 2020) governs the distribution of marital property. As a general rule, the court should distribute all marital property one-half to each party unless the court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315(a)(1)(A). In that case, the court must make some other division that the court deems equitable, taking into consideration a list of nine factors, including the length of the marriage, the occupation of the parties, the amount and sources of income, and employability. *Id.* In addition, Ark. Code Ann. § 9-12-315(a)(2) provides that all nonmarital property must be

returned to the party who owned it prior to the marriage unless the court makes some other division that the court deems equitable taking into consideration those factors enumerated in § 9-12-315(a)(1)—in which case the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.

A circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley*, *supra*. The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id*. The statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Baxley v. Baxley*, 86 Ark. App. 200, 167 S.W.3d 158 (2004). If an unequal distribution of property is awarded, the court must state within its order the basis and reasons for not dividing the property equally. Ark. Code Ann. § 9-12-315(a)(1)(B).

I. *Winslow Property*

Andrew first argues that the circuit court erred in finding that the Winslow property is marital property. The circuit court explained its reasoning in its remarks on the record:

> In a divorce, we no longer talk about Mr. Richards' property and Ms. Richards' property. We talk about marital property and nonmarital property. Nonmarital property is property that is owned by a party prior to the marriage or property that is received by gift during the marriage or the increase in value of nonmarital property over the course of the marriage. Thus, the IRA account. Mr. Richards invested in that account before the marriage. He owned it prior to the marriage. There were no contributions made during the marriage. So the increase in value of the IRA account is nonmarital. Now, I'm going through all of this because I think it's important for you to understand how I have come to my decisions in this case.
>
> . . . .
>
> So when trying to decide or deciding whether property is marital or nonmarital, the Court looks at contributions that were made during the marriage

6

and the Court can award those contributions. What happened here is Mr. Richards acquired the Winslow property. He received a deed to himself as a single person. He owned that property, subject to the mortgage, which only he signed, as of the date of marriage.

Remember the parties married in 2003. On August 29, 2005, Mr. Richards refinance[d] that property, that Winslow property, and took out about $30,000 in equity and that money was made [sic] used to pay a marital credit card debt. But Mr. Richards did something else on that day. He executed a deed to himself as a married person. Why Mr. Richards needed to execute a deed or decided to execute a deed to himself as a married person is a big question mark for me, but he did that. And I find that when he executed that [d]eed to himself on August 29, 2005, he made a gift to the marriage. He changed the form of ownership to reacquire that property on August 29, 2005, and he was a married man at that time.

Andrew asserts that there is no dispute that he owned the property prior to the marriage, that Tracey's name was not on either deed, that his intent was to maintain sole ownership, and that Tracey did not contribute any money toward the mortgage. He also says that no case law supports the circuit court's decision that premarital property is transformed into marital property by a subsequent deed to the husband only. He insists that Tracey has no equitable or legal claim to shared ownership of the Winslow property.

Tracey responds that, at the temporary hearing, Andrew had indicated that he did not intend to keep the Winslow house as separate property when it was refinanced.[1] Tracey also echoes the circuit court's explanation that the only reason to re-deed the property to himself as a married person was to make a gift to the marriage. And she points out that she was on the mortgage for the Winslow property, she and Andrew both benefited from the mortgage deduction on their joint tax returns, and the money used to pay the mortgage was marital property.

---

[1]In contrast, at the final hearing Andrew explained that when the Winslow property was refinanced, he deeded the property to himself singularly because "[I]t's mine. I mean, I bought it." He later said, "I didn't have any intention of conveying any of that property to [Tracey]."

7

The circuit court based its finding that the Winslow property is marital on Andrew's execution of a second warranty deed, from himself as a single person to himself as a married person, at the time he refinanced the property and entered a second mortgage with both him and Tracey designated as borrowers. The court found that in deeding the property to himself, Andrew essentially gifted the property to the marriage. We are not left with a definite and firm conviction that a mistake has been committed. Consequently, we hold that the circuit court did not clearly err in its finding that the Winslow property is marital property.

## II. *Fidelity 401(k)*

For his second point on appeal, Andrew asserts that the circuit court erred in treating the Fidelity 401(k) account as marital property after the court also found that contributions made from 1998 to the date of the marriage were nonmarital. In its remarks, the circuit court found, "[T]he Fidelity 401(k) plan that was started in 1998 when the defendant started working at BKD is marital as to contribution and increases since the parties' marriage. But his initial contributions made between or any time prior to the marriage of the parties are nonmarital, the defendant's nonmarital property." But, without further explanation, the court later remarked, "The [F]idelity 401(k) in the current value of approximately $500,000 will be equally divided between the parties." And as noted above, the court's written order found that the entire 401(k) account should be divided equally between the parties.

Andrew cites *Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999), in which this court held that not only are pension benefits based on contributions not made during the marriage considered nonmarital property, but the increase in value of nonmarital property is excepted from the definition of marital property. Here, the circuit court's order specifically stated that some of the contributions to the 401(k) were premarital. But then it treated the

8

entire account, including the nonmarital contributions, as marital property and divided the account equally between the parties, which Andrew contends is reversible error.

Tracey says the circuit court did not err because it has flexibility and broad powers when apportioning property, nonmarital as well as marital, to achieve an equitable distribution, and the critical inquiry is how the total assets are divided. *Copeland v. Copeland*, 84 Ark. App. 303, 139 S.W.3d 145 (2003). Tracey reviews the factors considered by the court pursuant to Ark. Code Ann. § 9-12-315(a)(1) and contends that the court acted well within its discretion and that *Thomas* is distinguishable and inapplicable because in that case the circuit court had not made an unequal distribution of property. Here, the circuit court found that the account was partially nonmarital but determined that it should be equally divided in order to achieve an equitable division of property.

As noted above, Ark. Code Ann. § 9-12-315(a)(2) provides that all nonmarital property shall be returned to the party who owned it prior to the marriage unless the court makes some other division that the court deems equitable taking into consideration those factors enumerated in § 9-12-315(a)(1), in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage. The court's quoted statement, "The Court finds that this division of property and marital debt to be equitable, although it might not be equal," is a general statement made at the conclusion of the court's remarks. This is not adequate to explain the court's basis and reasoning for not awarding Andrew his nonmarital contributions to the 401(k) and the increase in value of those contributions. Consequently, we reverse for the circuit court to either explain its reasoning or redistribute the 401(k) account in a manner consistent with this opinion.

9

III. *Alimony*

The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). A circuit court abuses its discretion when it exercises its discretion improvidently, thoughtlessly, or without due consideration. *Stuart v. Stuart*, 2012 Ark. App. 458, 422 S.W.3d 147. The appropriateness of an alimony award is determined in light of the facts in each case, and the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Zimmerman v. Pope*, 2015 Ark. App. 499, 471 S.W.3d 646.

The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Taylor, supra.* The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408.

Andrew explains that in the eighteen months prior to the divorce, he had lost his $500,000-a-year job and had been unable to find other suitable employment. He also had to borrow over $140,000 from his parents to meet the family's financial obligations. He asserts that his new job pays about 20 percent of his former salary, and his take-home income is $5,931.60 a month. His child-support and alimony obligations total $3,664.50 a month, which is approximately 62 percent of his total income. He argues that this result is unreasonable and should be reversed.

Tracey first argues that Andrew is using an incorrect figure for his monthly income; the

10

circuit court found that his net monthly income is $6,875, and his monthly expenses total $4,565, leaving him $2,310 in disposable income. The court then ordered permanent alimony of $2,310 a month, and $312 a month for twenty-four months in temporary alimony, noting the IRA worth $95,000 that was awarded to Andrew as nonmarital property. So, while the addition of temporary alimony resulted in a total that *exceeds* Andrew's current disposable income, Tracey notes that the division of marital property and an award of alimony are complementary devices that a circuit court may employ to make the dissolution of the marriage financially equitable. *Webb v. Webb*, 2014 Ark. App. 697, 450 S.W.3d 265.

Alimony and the division of marital property are more or less inextricably intertwined decisions when balance the financial and other equities at play in the case. A change in one may trigger an adjustment in the other. *Webb, supra.* Because we are reversing the distribution of the Fidelity 401(k) account, we also remand for the circuit court to reconsider the alimony award that, curiously, awarded all of Andrew's disposable monthly income to Tracey while accepting Tracey's view of Andrew's finances. In fact, as Tracey herself notes, the one-two combination of temporary and permanent alimony *exceeded* his monthly expenses.

IV. *Inequitable Result*

Andrew in the end employs a cumulative-error argument to assert that the court's division of property and debt, combined with the child support and alimony obligations, resulted in a financially inequitable divorce. To the extent Andrew reargues points already made above, those arguments have been addressed. Any issue with the distribution of the Fidelity 401(k) and alimony can be addressed on remand. Any other concerns raised in this catch-all argument have not been fully developed and need not be addressed. *See Hatch v. Hatch*, 2009 Ark. App. 337, 308 S.W.3d 174 (the appellate courts will not address arguments

11

unless they are sufficiently developed and include citation to authority).

Affirmed in part; reversed and remanded in part.

WHITEAKER and MURPHY, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Gunn Kieklak Dennis LLP*, by: *Jennifer Lloyd*, for appellee.