Cite as 2023 Ark. App. 475

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-646

| | |
|---|---|
| ANDREW HAMERLINCK | Opinion Delivered October 25, 2023 |
| APPELLANT | |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-18-908] |
| V. | |
| | HONORABLE CECILIA DYER, JUDGE |
| DANIELLE HAMERLINCK | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |
| APPELLEE | |

**CINDY GRACE THYER, Judge**

This is the second appeal involving appellant Andrew Hamerlinck and appellee Danielle Hamerlinck. In *Hamerlinck v. Hamerlinck*, 2022 Ark. App. 89, 641 S.W.3d 659 (*Hamerlinck I*), this court affirmed the decision of the Garland County Circuit Court awarding the Hamerlincks joint legal and physical custody of their two children. We dismissed the remaining issues on appeal, however, because we lacked a final order. *Hamerlinck I*, 2022 Ark. App. 89, at 12, 641 S.W.3d at 665. Following the issuance of this court's mandate, the circuit court entered an amended decree in which it restated its initial decree and denied and dismissed all other pending motions. Andrew timely appealed from the amended decree, and he now argues that the circuit court erred in its division and distribution of the couple's property. We affirm in part and reverse and remand in part.

In *Hamerlinck I*, we set forth the underlying facts of the parties' "contentious and aggressive litigation" that resulted in the decree at issue on appeal. *Id.* at 2, 641 S.W.3d at 660. Those facts dealt almost entirely with the Hamerlincks' custody dispute and are largely irrelevant to this appeal. Briefly, however, Andrew and Danielle married on September 4, 2010, and separated in 2018 when Danielle filed a complaint for separate maintenance. Andrew answered and filed a counterclaim for divorce. Over the course of the next two years, the circuit court held multiple hearings and issued multiple temporary custody orders. Over two days in December 2019 and July 2020, the circuit court held a final divorce hearing at which it heard considerable testimony that focused on each party's desire for custody. A portion of the hearings, however, also addressed three of the couple's financial accounts, the marital home, and certain business assets. These topics form the crux of the arguments presented in this appeal. We therefore turn to the substance of the testimony presented at trial and the circuit court's findings regarding these matters.

The financial accounts that are the subject of Andrew's first argument on appeal are a Fidelity Roth Individual Retirement Account (the "Roth IRA"), a Fidelity rollover IRA (the "rollover IRA"), and an Arvest money market account (the "money market account").[1] Andrew testified that he established the Roth IRA in 2004 but had not made contributions

---

[1]The court also heard evidence regarding a fourth account--Andrew's Fidelity brokerage account--but Andrew does not dispute that this account was a marital asset because it was created after the couple's marriage with marital funds. In addition, Andrew had a Wells Fargo retirement account through his current job at Cardinal Health, which he agreed had been "acquired and accumulated during the course of [the] marriage." This retirement account is likewise not an issue in this appeal.

to that account in "eight plus years, probably" because he and Danielle made too much to contribute to a Roth IRA. Andrew's exhibit 1 included a Roth IRA investment report for the period ending September 30, 2010, showing a balance of $19,484.59. Exhibit 1 also reflected that Andrew made postmarital contributions to the account of $5000 in April 2011, $5000 in March 2012, and $5135.37 in February 2013. The latest account summary that was part of exhibit 1 indicated that the account's value was $97,854.53 as of September 30, 2019.

The rollover IRA was funded with $70,689.69 in February 2013. Andrew testified that the funds for the rollover IRA came from retirement benefits that he accrued during his time working for both Sanofi Pasteur, which was between 2008 and 2011, and Eli Lilly, where he began working "in 2011 [or] 2012." It was unclear from Andrew's testimony whether contributions associated with his Eli Lilly retirement were still being made. Nonetheless, Andrew's exhibit 2, a collection of investment reports for the rollover IRA, indicated that the rollover IRA was valued at $115,164.50 as of June 2019.

And finally, as it is pertinent to the financial-account issues raised on appeal, Andrew presented testimony about the money market account. Andrew opened the account before he and Danielle married, but he put her name on the account after they wed. He acknowledged that Danielle withdrew money from that account and repaid it during the course of the marriage, although he denied she deposited money into the account on a regular basis. In the weeks before the parties filed for divorce, Andrew closed the money market account and opened a new one in order to prevent Danielle from withdrawing any

more money from it. Andrew estimated that the balance in that account when they got married was around $130,000, and his exhibit 4 reflected that the final balance when he closed the account in October 2018 was $91,502.78. Danielle disputed the value of the account at the time of the marriage and testified that she made multiple deposits into and withdrawals from the account during the marriage, treating it as her own.

In addition to the financial accounts, Andrew and Danielle both testified about their home on Vector Lane in Hot Springs. The house was built in 2015. Andrew testified that he was the general contractor on the job and that he made all the mortgage payments from his income. Although he admitted that the house was built during the marriage, Andrew asserted that Danielle had nothing to do with the construction of the house and claimed that she should receive no more than 25 percent of its value. Danielle testified that the mortgage was placed in both their names from the beginning and that it remained in both names at the time of the divorce hearing.

Danielle offered testimony about her business, Dignified Dietitians. She explained that she started the LLC after she and Andrew had married. She estimated the value of the company to be between $50,000 and $80,000, although she did not present any documentation in support of that figure.

At the conclusion of the final hearing, the court granted the divorce and asked both parties to prepare proposed findings of fact and conclusions of law on all issues, including their finances and the allocation of property. The court subsequently issued a decree of divorce that made the following pertinent findings:

4

4. 108 Vector Lane, Hot Springs, AR 71913 is marital property within the scope of Arkansas Code Annotated § 9-12-315(b). The property was acquired during the marriage of the parties, each participated in the construction and design of the home and it is mortgaged in the names of Plaintiff and Defendant.

5. The Court finds no reason to deviate from the equitable presumption of one-half (1/2) to each party with regard to the marital home and all other marital property.

6. Taking into consideration the eight year length of the marriage up to separation; that the parties are both educated, professional people well able to be employed in their chosen fields; both are in good health with equivalent earning capacity and have a similar need for capital acquisition; the contribution of each party in acquisition, preservation, or appreciation of marital property, including Plaintiffs services as a homemaker--these factors all weigh in favor of an equitable distribution of one-half to each.

. . . .

8. The marital home shall be sold in accordance with Arkansas Code Annotated § 9-12-315(a)(3)(B) . . . [and the] proceeds shall be evenly divided between Plaintiff and Defendant.

. . . .

20. The financial accounts shown in Plaintiff's Record Exhibits 1, 2, 3 and 4 are marital property and they shall be immediately liquidated or divided with the proceeds evenly divided between the parties based on their values as of November 25, 2020. Upon review of the evidence and testimony presented, the Court finds that Plaintiff's argument that the financial accounts--Arvest Money Market Account ending in 8682, Fidelity IRA accounts ending in 8266 and 9220, and the Fidelity Brokerage Account ending in 3029,[2] are marital property and that each party contributed to the growth of same during the marriage.

---

[2]These accounts ending in 8266 and 9220 are, respectively, the Roth IRA and the rollover IRA. As noted above, Andrew does not challenge the circuit court's division of the Fidelity Brokerage Account on appeal.

Andrew timely appealed, and he now challenges the circuit court's findings regarding the nature and division of the Roth IRA, the rollover IRA, and the money market account. In addition, Andrew argues that the court erred in awarding Danielle 50 percent of the marital home, and he challenges the court's failure to award him any of the value of Danielle's business.

This court reviews cases involving the division of marital property de novo. *Philmon v. Philmon*, 2023 Ark. App. 150, at 5, 662 S.W.3d 728, 732. We review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Id.* A circuit court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We give deference to the circuit court's superior position to determine matters of witness credibility and the weight to be given to their testimony. *Scherling v. Scherling*, 2023 Ark. App. 402.

Arkansas Code Annotated section 9-12-315 (Repl. 2020) governs the distribution of marital property. As a general rule, the court should distribute all marital property one-half to each party unless the court finds such a division to be inequitable. Ark. Code Ann. **§** 9-12-315(a)(1)(A). In that case, the court must make some other division that the court deems equitable, taking into consideration a list of nine factors, including the length of the marriage, the occupation of the parties, the amount and sources of income, and employability. *Id.*

Arkansas Code Annotated section 9-12-315(b) provides that "marital property means all property acquired by either spouse subsequent to the marriage." All earnings or other property acquired by each spouse after marriage must be treated as marital property unless it falls into one of the statutory exemptions contained in Ark. Code Ann. § 9-12-315(b). *Wilson v. Wilson*, 2023 Ark. App. 155, 662 S.W.3d 273.

One of these statutory exemptions encompasses "[p]roperty acquired prior to marriage . . . including . . . an individual retirement account" and the "increase in value of property acquired prior to marriage . . . including . . . an individual retirement account." Ark. Code Ann. § 9-12-315(b)(1), (5). Stated another way, an individual retirement account acquired prior to marriage and any increase in value thereof constitutes nonmarital property. All nonmarital property must be returned to the party who owned it prior to the marriage unless the court makes some other division that the court deems equitable, taking into consideration those factors enumerated in § 9-12-315(a)(1)—in which case the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage. Ark. Code Ann. § 9-12-315(a)(2).

A circuit court has broad powers to distribute property in order to achieve an equitable distribution. *Richards v. Richards*, 2022 Ark. App. 309, 651 S.W.3d 190. The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id.* The statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Id.*

With these standards in mind, we turn to Andrew's arguments on appeal. His first argument concerns the Roth IRA, the rollover IRA, and the money market account. Andrew challenges the circuit court's findings that these accounts are marital property that should be divided equally between him and Danielle. He asserts that individual retirement accounts are excluded from the statutory definition of marital property, and the court therefore erred in awarding Danielle half of those accounts. He also argues that the court erred in awarding Danielle half of the money market account that he owned before marriage.

Regarding the Roth IRA and the rollover IRA, Andrew argues that both were "well established before the marriage," they were therefore nonmarital property, and it was clearly erroneous for the court to award Danielle any portion of either account. The undisputed testimony and documentary evidence before the circuit court showed the Roth IRA was established in 2004, six years before the parties married in 2010. On the other hand, evidence before the circuit court also revealed that Andrew made at least three contributions to the Roth IRA during the marriage.[3] The circuit court nonetheless concluded that the entirety of the Roth IRA was purely marital property to be divided equally between Andrew and Danielle. This was erroneous.

The evidence regarding the rollover IRA was somewhat murky. Although Andrew testified that he funded that account with retirement pay earned while he was working at

---

[3]As noted above, there were deposits to Andrew's Roth IRA of $5000 in April 2011, $5000 in March 2012, and $5135.37 in February 2013. Each of these deposits occurred after Andrew and Danielle married in September 2010.

Sanofi Pasteur––a job he started before the marriage but continued "through 2011"––he also testified that he funded the account with retirement benefits he earned from Eli Lilly— a job he held from "2011 to 2012," which was after the marriage. Thus, with evidence before the court that this account comprised both marital and nonmarital funds, the court erred in finding that the entirety of the rollover IRA was marital property.

As noted above, Arkansas Code Annotated section 9-12-315(a)(2) provides that all nonmarital property shall be returned to the party who owned it prior to the marriage unless the court makes some other division that the court deems equitable taking into consideration those factors enumerated in § 9-12-315(a)(1), in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage. Therefore, with respect to the Roth IRA and the rollover IRA, we reverse and remand for the circuit court to either redistribute these two accounts in a manner consistent with this opinion and the statutes governing the distribution of marital and nonmarital assets, or should it opt to make an equitable distribution of nonmarital property, explain its reasoning for doing so. *See Richards v. Richards*, 2022 Ark. App. 309, at 9, 651 S.W.3d 190, 196–97 (reversing circuit court's equitable division of property consisting of both pre- and postmarital contributions to husband's 401(k) account because the court did not explain the basis for its reasoning).

Although the court erred in its conclusion that both IRAs were solely marital property, we have no such concerns about its decision that the money market account was marital property. Andrew testified that he put Danielle's name on this account after they

9

were married, and the exhibit showing the account's final balance before Andrew closed it clearly shows that both parties' names remained on it. In addition, there was testimony before the circuit court that Danielle had treated the account as her own by making multiple deposits into the account and withdrawals from it over the years. Once property, whether real or personal, is placed in the names of persons who are husband and wife without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety, and clear and convincing evidence is required to overcome that presumption. *Cole v. Cole*, 53 Ark. App. 140, 144, 920 S.W.2d 32, 35 (1996). Andrew failed to present such "clear and convincing" evidence below and fails to make a cogent argument on appeal that he rebutted the above presumption. We therefore affirm that portion of the circuit court's decree finding that the money market account was marital property.

In his second point on appeal, Andrew argues that the circuit court erred in awarding Danielle half the value of the marital home. He concedes that the house was marital property, and he acknowledges that a circuit court must distribute marital property one-half to each party unless such a division would be inequitable. He nevertheless argues that the circuit court erred in awarding Danielle half the value of the home because he put more work into its construction and more money into the mortgage. In essence, he argues that the circuit court should have made an unequal distribution of the proceeds of the sale of the home.

There is a presumption that property placed in both spouses' names is held in tenancy by the entirety and is marital property. *McKinnis v. McKinnis*, 2020 Ark. App. 479, 612 S.W.3d 730. Moreover, there is a presumption that an equal division of marital property is

fair and equitable. *See Ellis v. Ellis*, 2017 Ark. App. 661, at 8, 536 S.W.3d 166, 172; *Davis v. Davis*, 2016 Ark. App. 210, 489 S.W.3d 195. Clear and convincing evidence is required to overcome this presumption. *Powell v. Powell*, 72 Ark. App. 17, 110 S.W.3d 290 (2003). Unless that presumption is overcome, the property shall be distributed one-half to each party. *McKinnis*, *supra* (citing Ark. Code Ann. § 9-12-315(a)).

Andrew points to nothing in the record other than his self-serving testimony that he put more effort into the house than Danielle did. Moreover, he fails to acknowledge the presumption in favor of an equal division of marital property and cites no authority in support of his bare claim that he deserved a greater share of the value of the home. It is axiomatic that we will not consider an argument that is not supported by citation to authority or convincing argument. *Grimsley v. Drewyor*, 2019 Ark. App. 218, 575 S.W.3d 636; *Foster v. Foster*, 2010 Ark. App. 594, 377 S.W.3d 497.

Finally, Andrew argues that the court erred in not awarding him any of the value of Danielle's business. He argues it was undisputed that Danielle started her LLC, Dignified Dietitians, after they were married and that Danielle estimated the value of the company to be between $50,000 and $80,000. Andrew contends that because this was a marital asset, it should have been subject to division by the court. His argument is not preserved for this court's review.

In his complaint for divorce, Andrew generally sought an equitable division of the parties' property. There was some testimony presented at the multiday trial about the value of Danielle's business. However, as Andrew acknowledges in his brief, the circuit court did

11

not address "this asset" in the divorce decree. In *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999), the appellant requested a division of the appellee's pension plan in her complaint for divorce and presented evidence about the value of the pension at trial, but the circuit court made no ruling on the subject. Accordingly, the supreme court in *Myrick* concluded that appellant's failure to obtain a ruling on the issue precluded it from addressing the argument on appeal. 339 Ark. at 6, 2 S.W.3d at 63 (noting it is "well settled that this court will not address an argument where the [record] does not show that it was made in the trial court[,] . . . [and] issues upon which the trial court failed to make a ruling [are] not preserved for appellate review"). As in *Myrick*, we simply have nothing to review. As such, we do not address Andrew's argument regarding the value of Danielle's business.

In sum, we must reverse in part because of the court's error in finding that the entirety of the Roth IRA and the rollover IRA were marital property. In doing so, however, we take note of Danielle's suggestion that the circuit court's division of the remainder of the couple's assets was predicated on the amount of retirement income she was awarded. We recognize that circuit courts have broad powers in distributing marital property in order to effect a division that is fair and equitable under the specific circumstances of the case. *See Wadley v. Wadley*, 2012 Ark. App. 208, 395 S.W.3d 411. Accordingly, on remand, we advise the circuit court that it is not precluded from reconsidering its overall allocation of marital and nonmarital property in order to effect a fair and equitable disposition of this matter, so long as it comports with the requirements of section 9-12-315(a)(1)(B) & (a)(2) to explain its reasons for making an equitable division of the property.

Affirmed in part; reversed and remanded in part.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Green & Gillispie*, by: *Chad M. Green*, for appellant.

*Dusti Standridge*, for appellee.